Weldon, J.,
delivered the opinion of the court:
The claim in this case was presented-to Congress in the year 1874, and on the 4th day of March, 1885, it was referred to this court under the provisions of the Act March 3, 1883 (22 Sfcat. L., 495).
In pursuance of that reference the claimant filed a petition, in which it is alleged that the said institution was incorporated by an act of the legislature of the State of Kentucky in the year 1857; that prior to August 30, 1862, it was the owner in fee of 27 acres of land in the county of Madison and State aforesaid; that the ground, fruit and shade trees, buildings, and fencing were worth the sum of $40,000; that on the 30th day of August, 1862, the battle known as the battle of Richmond was fought on land adjoining said premises; that the said buildings, etc., were taken possession of by the United States forces after said battle, and used for hospital purposes for the space of nine months and twenty-five days; that upon the surrender of such premises by the forces they were in a dilapidated condition and untenantable;’ that great damage was done to said premises while they were used as aforesaid; that in consequence of such damage the premises were not used for the space of fourteen months, 'during which time they were being repaired; that the repairs cost the institution the sum of $5,086.20.
“That the president and trustees filed their claim before the Quartermaster-General, under section 300, A and B, Revised Statutes, for the following amounts';' -
For rent of building from August 30, 1862, to June 25, 1863 -$4,097.22
For rent of building from June 25, 1863, to September 15,1864.. 6,141.69
For wood used as fuel.. 2,233.00
For cash paid for repairs rendered necessary by the occupancy of the premises by the United States_.’. 5,086.20
Making together.. 17,558.11
“And that said officer, on the day of 18 , certified to the Third Auditor of the Treasury the amount of $4,097.22 for rent from August 30, 1862, to June 25, 1863, and recommended the payment of said sum, which was subsequently paid, but refused and still refuses to report the balance of their said claim, to wit, for $13,460.89, and recommend payment of the same.”
*190 The testimony tends to prove the allegations as stated in the petition of the claimant, except it is impossible to determine the value of the wood taken as fuel. The estimate seems-to be predicated on its condition as shade, fruit, and ornamental trees, and develops a case of damage only.
The third section of the act under which the reference was-made provides as follows:
“The jurisdiction of said court shall not extend to or include any claim against the United States growing out of the destruction or damage to property by the Army or Navy during the-war for the suppression of the rebellion, or for the use or occupation of real estate by any part of the military or naval forces of the United States in the operation of said forces during the said war at the seat of war.”

&

The legal theory of the petition is, that the United States should pay damages for the waste and destruction of the premises while they held the property, and for which they would be liable as a tenant if they were a tenant of the claimant. If the relation of landlord and tenant existed between the parties, then the claimant might have sued in this court, and this proceeding would be liable to an objection under the second clause of said section, which provides as follows:
“Nor shall said court have jurisdiction of any claim against the United States which is now barred by the provisions of any law of the United States.”
But the relation of landlord and tenant did not exist; as that relation is the result of a contract, either expressed or implied. (Genau v. District of Columbia, 20 C. Cls. R., 389.)
The premises were taken possession of without the consent of the owner; and that possession was retained by the force and from the necessity of the defendants.
In the case of Heflebower v. United States (21 C. Cls. R., 231), this court said, in speaking of the first clause of said section :
“The first provision is governed by the phrase “ growing out of,” and is not qualified by the remote clause at the end of the second restriction, “the seat of war.” The second is governed by the preposition “for”; and is qualified by th'e clauses “in the operation of said forces” at the seat of war. The former is not restricted to any kind of property nor limited to any place, but embraces all property, real or personal, whether on loyal or hostile territory.”
*191 This not being a proceeding for the use and occupation of real estate, it is not necessary to determine whether, the premises were at the seat war, within the meaning of the law of our jurisdiction. It will be seen by what.has been decided in the Heflebower case, that it is not material whether the damage is done on loyal or disloyal territory; it is sufficient to bar the jurisdiction of the court that the claim grows out of destruction or damage to property by the Army during the war.
The statute includes all damage, whether it be as the result of force directly applied by the Army and Navy in hostile operations against the public enemy, or whether it result from the wantonness or negligence of the military forces engaged in the war.
For the use of the premises from the 30th day of August, 1862, to the 25th of June, 1863 (the actual time covered by the occupancy of the United States), the claimant has been paid, as alleged in the petition; and the second item of rent alleged, to wit, from June 25,1863, to September 15,1864, is for a period of time in which the claimant was necessarily employed in repairing the damages done by the defendants while they occupied the premises for military purposes. Rent not being incident to the occupancy of the premises, said charge must, in law, be for damages, and comes within the prohibited jurisdiction of the third section of the statute.
This court said in the Beasly Case (21 C. Ols. R., 225):
“Congress did not intend by the passage of the Bowman Act to recognize in the remotest degree any liability growing out of the prosecution of belligerent operations against the public enemy.”
It was also held—
“In a Congressional case, if the evidence shows that it was one of destruction or damage to property, and not of supplies or stores taken for use, the court must dismiss it for want of jurisdiction, without reporting the facts to Congress.”
The petition in this-case is dismissed for want of jurisdiction,, and the order dismissing the same will be certified to the Committee on War Claims of'the House of Representatives.
Dayis, J., in consequence of illness, took no part in this case.